United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued November 5, 1998 Decided January 8, 1999 

 No. 97-5348

 Darlene Butler, 

 Appellant

 v.

 Togo D. West, Jr., 

 Secretary, Department of the Army, 

 Appellee

 Appeal from the United States District Court 

 for the District of Columbia 

 (No. 94cv02182)

 James L. Kestell argued the cause and filed the briefs for 
appellant.

 Michael J. Ryan, Assistant United States Attorney, argued 
the cause for appellee. On the brief were Wilma A. Lewis, 
United States Attorney, R. Craig Lawrence, Assistant United 
States Attorney, and Paige E. Harrison, Special Assistant 

United States Attorney. Gregory W. Addington, Assistant 
United States Attorney, entered an appearance.

 Before: Wald, Randolph and Tatel, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Wald.

 Wald, Circuit Judge: Darlene Butler ("Butler" or "appel-
lant") brings this appeal challenging two rulings by the 
district court that, taken together, dismissed the entirety of 
her suit against Togo West, the Secretary of the Army 
("appellee"). Prior to her December 11, 1992 removal for 
insubordination and creating a disturbance, Butler had 
worked for several years in the Civilian Personnel Office at 
Walter Reed Army Medical Center in Washington, D.C. 
("Walter Reed"). After Equal Employment Opportunity 
("EEO") administrative proceedings proved ineffectual, appel-
lant filed a mixed case appeal with the Merit Systems Protec-
tion Board ("MSPB" or the "Board") alleging that her remov-
al violated the Civil Service Reform Act of 1978 ("CSRA" or 
the "Act"), Pub. L. No. 95-454, 92 Stat. 1111 (codified as 
amended in sections of 5 U.S.C. (1996)), and was motivated by 
discriminatory animus. The MSPB Administrative Judge's 
Initial Decision upheld the Army's allegations of insubordina-
tion, but mitigated the punishment to a thirty-day suspension 
and ordered appellant's reinstatement with back pay. The 
Army petitioned the full Board for review, and Butler filed a 
cross petition challenging the thirty-day suspension. Subse-
quently, Butler filed this complaint with the United States 
District Court for the District of Columbia, suing Togo West 
in his official capacity and broadly alleging unlawful discrimi-
nation in her removal. On defendant's motion, the district 
court dismissed Butler's Title VII and retaliation claims for 
failure to exhaust administrative remedies. Following defen-
dant's motion to reconsider retention of her First Amendment 
claim, the district court dismissed that as well. We find that 
the district court improperly narrowed the window for filing 
suit available under 5 U.S.C. s 7702(e)(1)(B), which explicitly 
allows all of appellant's claims, and accordingly vacate the 
dismissal and remand for further proceedings.


 I.

 The procedural history of this case is convoluted but the 
controlling legal question is time-specific; consequently, we 
discuss only those facts necessary to our decision.

 On December 11, 1992, the Department of the Army re-
moved Darlene Butler from her position as a GS-11 Position 
Classification Specialist for insubordination and creating a 
disturbance. Butler, an African-American woman, had begun 
to have problems at work roughly two years earlier, following 
her October 15, 1990 reassignment from the Position Manage-
ment and Classification Division at Walter Reed to the Re-
cruitment and Placement Division, Special Action Branch. 
Prior to her termination, she had initiated EEO counseling on 
four separate occasions--in December of 1991, April of 1992, 
January of 1993, and either February or March of 1993.1 
Following each episode she filed a formal EEO complaint 
alleging both racial discrimination and retaliation in various 
terms and conditions of her employment. In each instance, 
an Army investigator and an Equal Employment Opportunity 
Commission ("EEOC") Administrative Judge recommended a 
finding of "no discrimination," and the Department of the 
Army ("Army") adopted their recommendations on June 15, 
1994.

 Following her removal in December of 1992, which she 
attributed to discriminatory animus and hostility towards her 
recent election as an officer of a newly-formed chapter of 
Blacks in Government ("BIG"), Butler again pursued the 
necessary administrative procedures with the Army. She 
timely sought EEO counseling, and then filed a formal com-
plaint with the Equal Employment Opportunity Office at 

__________
 1 The record before us is unclear as to the exact dates that EEO 
counseling initiated. The Bench Decision of the EEOC Administra-
tive Judge lists December 6, 1991, April 13, 1992, January 13, 1993, 
and February 10, 1993. See Butler v. West, Complaint Nos. 
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X, 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X, 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X, 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X, at 3-6 
(E.E.O.C. May 12, 1994). The district court, by contrast, cites 
December 6, 1991, April 6, 1992, January 13, 1993, and April 22, 
1993. See Butler v. West, No. 94-2182 at 2 (D.D.C. Feb. 14, 1997).

Walter Reed in which she alleged that her termination was a 
product of racial discrimination. The Department of Defense 
Office of Complaint Investigations recommended a finding of 
"no discrimination" on December 10, 1993. Butler then filed 
a "mixed case appeal"2 with the MSPB on April 5, 1994, 
challenging her removal as both procedurally improper3 and 
discriminatorily motivated. On August 3, 1994, exactly 120 
days after Butler lodged her appeal, an MSPB Administrative 
Judge ("AJ") issued an Initial Decision which held that: (i) 
the Army had carried its burden of showing that appellant 
had been insubordinate and had created a disturbance; (ii) 
the resulting disciplinary action promoted the efficiency of the 
agency as required by 5 U.S.C. s 7513(a)4; (iii) the procedur-
al errors made in removing the appellant were harmless; (iv) 
Butler failed to make out her affirmative defenses of retalia-
tion and discrimination; and (v) that the removal penalty was 
unreasonable. Accordingly, the AJ mitigated her removal to 
a thirty-day suspension and ordered back pay with interest. 
The Army petitioned the MSPB to review this penalty reduc-
tion within the thirty-five-day period provided for by the 
MSPB's regulations, see 5 C.F.R. s 1201.114(d), and appellant 

__________
 2 "A mixed case appeal is an appeal filed with the MSPB that 
alleges an appealable agency action was effected, in whole or in 
part, because of discrimination on the basis of race, color, religion, 
sex, national origin, handicap or age." 29 C.F.R. s 1614.302(a)(2).

 3 Butler alleged that the Army failed to follow the procedures 
articulated in the Walter Reed Army Medical Center Supervisor's 
Handbook for the recommendation and processing of adverse ac-
tions. The MSPB Administrative Judge found that the agency 
failed to adhere to its normal procedures for initiating and investi-
gating disciplinary matters, but that this departure neither harmed 
nor prejudiced the appellant. See Butler v. Department of the 
Army, USMSPB Initial Decision, No. DC-0752-94-0396-I-1, at 9 
(August 3, 1994).

 4 5 U.S.C. s 7513(a) provides that "[u]nder regulations prescribed 
by the Office of Personnel Management, an agency may take an 
action covered by this subchapter against an employee only for such 
cause as will promote the efficiency of the service."


filed a cross petition addressing only her nondiscrimination 
claim of procedural irregularities.

 On October 11, 1994, while the cross petitions were pending 
before the MSPB, appellant filed this action in the United 
States District Court for the District of Columbia, naming 
Togo West, in his official capacity as the Secretary of the 
Army, as defendant. Butler's complaint contained three 
counts, alleging racial discrimination, retaliation, and a viola-
tion of her First Amendment rights to free speech and 
association. Subsequently, on December 21, 1994, the MSPB 
denied both petitions for review and the AJ's Initial Decision 
became final. See 5 C.F.R. s 1201.113(b) ("If the Board 
denies all petitions for review, the initial decision will become 
final when the Board issues its last decision denying a peti-
tion for review."). In March of 1995, the appellee moved to 
dismiss Butler's lawsuit under Rule 12(b) of the Federal 
Rules of Civil Procedure or, in the alternative, for summary 
judgment, alleging that Butler filed her complaint premature-
ly as the MSPB had not yet issued a final decision. The 
district court dismissed appellant's discrimination claims as 
untimely in a February 14, 1997 Memorandum Opinion, rea-
soning that Butler had failed to exhaust available administra-
tive remedies under the CSRA prior to filing suit. While the 
court originally held that she had stated a timely First 
Amendment claim independent from her Title VII action, a 
November 12, 1997 Memorandum Opinion and Order granted 
the defendant's motion for reconsideration and dismissed 
Butler's First Amendment claim as equally untimely under 
the CSRA.

 Recognizing that it faced a question of first impression, the 
district court found that appellant filed her suit at a time 
when the court lacked jurisdiction to hear her complaint. 
Although section 7702(e)(1)(B) states that an individual claim-
ing discrimination shall be entitled to file a civil action if there 
is no judicially reviewable action within 120 days following the 
filing of an appeal with the MSPB, the court held that an 
initial decision by the AJ within that period is sufficient to 
foreclose immediate access to the federal courts. For pur-
poses of section 7702(e)(1)(B), it ruled, "[a]n initial decision is 


essentially the same as a final decision...." Butler v. West, 
No. 94-2182 at 7 (D.D.C. Feb. 14, 1997) ("Butler I").

 The court articulated three separate grounds for this con-
clusion: First, it reasoned that an initial decision and a final 
decision are functionally indistinguishable, as the former auto-
matically converts into the latter provided that neither party 
(nor the MSPB on its own motion) seeks further Board 
review. Second, it noted that 29 C.F.R. s 1614.310(h) autho-
rizes an individual with a mixed case to file a civil action 
"[a]fter 120 days from the date of filing an appeal with the 
MSPB if the MSPB has not yet made a decision" (emphasis 
added). Since the EEOC refers to a final decision in other 
subsections of 29 C.F.R. s 1614.310, the court concluded that 
the EEOC's use of the more general term decision in section 
1614.310(h) signals an intent that any MSPB decision--initial 
or final--should foreclose judicial review. Finally, the court 
reasoned that any other reading of section 7702(e)(1)(B) 
would lead to absurd results that defied the purpose of the 
statute, since it necessarily takes more than 120 days for the 
MSPB fully to process most claims before it. Were a pro-
spective plaintiff allowed to proceed in district court whenev-
er the Board failed to meet that deadline, the statutory 
requirement of MSPB participation would be rendered mean-
ingless.

 According to the district court, appellant should have fol-
lowed the alternative avenue into the federal courts provided 
by 5 U.S.C. s 7703(b), which allows a civil suit to be filed 
within thirty days of a final MSPB decision. Since Butler 
neither refiled her suit nor moved to amend her complaint 
within the thirty-day period following December 21, 1994, the 
date on which the Initial Decision became final, her complaint 
was untimely. In this appeal, Butler challenges the district 
court's construction of the relevant statutory provisions, argu-
ing that her suit was timely under 5 U.S.C. s 7702(e)(1) as 
the MSPB had failed to issue a judicially reviewable decision 
within 120 days after Butler lodged her appeal. We agree.5

__________
 5 Appellant additionally asserts (i) that her complaint "ripened" 
when the MSPB denied the cross petitions for review and the Initial 

 II.

 The CSRA lays out a comprehensive statutory framework 
for the processing of mixed case appeals, which has been 
supplemented and elaborated by regulations issuing from 
both the EEOC and the MSPB. See 5 U.S.C. s 7702; 5 
C.F.R. ss 1201.151-1201.175; 29 C.F.R. ss 1613.401-
1613.421. As the procedural history of this case well illus-
trates, the provisions that structure both administrative and 
judicial review of adverse personnel actions form a complicat-
ed tapestry. Where Congress has spoken authoritatively, the 
time limits articulated by the Act have been strictly policed. 
See King v. Dole, 782 F.2d 274, 276 (D.C. Cir. 1986) (per 
curiam) (given "the clear and emphatic language of the statu-
tory provision" requiring civil action to be filed within thirty 
days from notice of a judicially reviewable action, district 
court lacks jurisdiction to hear case filed thirty-one days after 
receipt of notice); Harrison v. Bowen, 815 F.2d 1505, 1515 
(D.C. Cir. 1987) ("reading between the lines [of the CSRA] to 
interpolate remedies Congress did not provide can only lead 
the Court into error"). To some extent, this case presents 
the flip side of King, as it requires us to determine whether 
the equally clear and emphatic language of section 
7702(e)(1)(B), which facially permits a lawsuit when 120 days 
pass without a judicially reviewable decision, merits an equal-
ly strict reading. We hold that it does.

 A.The Statutory and Regulatory Framework for Mixed 
 Case Appeals

 5 U.S.C. s 7702 contains the statutory provisions directly 
addressing the procedural path of a mixed case--an adverse 
personnel action subject to appeal to the MSPB coupled with 
a claim that the action was motivated by discrimination. See, 
e.g., McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir. 1995) 

__________
Decision became final, such that her complaint then became timely 
under 5 U.S.C. s 7703(b), and (ii) that she did not have to exhaust 
administrative remedies with respect to her First Amendment 
claims, as the MSPB was incapable of granting full relief. Since we 
hold appellant's complaint timely under 5 U.S.C. s 7702(e)(1), we do 
not reach these contentions.

(defining the mixed case in similar terms); Romain v. Shear, 
799 F.2d 1416, 1419 (9th Cir. 1986) (per curiam) (same). 
When the discrimination is alleged as a violation of Title VII, 
the federal employee must negotiate and exhaust the complex 
administrative regime that governs Title VII public employ-
ment cases in addition to the usual procedures for challenging 
an adverse personnel action under the CSRA. See Brown v. 
General Servs. Admin., 425 U.S. 820, 832-33 (1976) (requiring 
exhaustion of administrative remedies prior to filing a Title 
VII suit in federal district court).6 The MSPB and EEOC 
regulations that structure the prosecution of mixed cases are 
extremely complicated, but they can be reduced to a decision 
tree, albeit a somewhat elaborate one. We briefly survey this 
scheme so as to lay out the statutory and regulatory backdrop 
for our inquiry into the proper meaning of section 
7702(e)(1)(B).

 An employee who intends to pursue a mixed case has 
several paths available to her. At the outset, the aggrieved 
party can choose between filing a "mixed case complaint"7 
with her agency's EEO office and filing a "mixed case ap-
peal"8 directly with the MSPB. See 29 C.F.R. s 1614.302(b). 
By statute, the relevant agency EEO office and the MSPB 
can and must address both the discrimination claim and the 
appealable personnel action. See 5 U.S.C. s 7702(a). Should 
she elect the agency EEO route, within thirty days of a final 
decision she can file an appeal with the MSPB or a civil 

__________
 6 "However, when a federal employee claims he or she has been 
affected by both an 'adverse employment action' and a related Title 
VII violation, administrative remedies may be exhausted for Title 
VII purposes by asserting both claims before the MSPB." Sloan v. 
West, 140 F.3d 1255, 1259 (9th Cir. 1998) (citing McAdams, 64 F.3d 
at 1141).

 7 "A mixed case complaint is a complaint of employment discrimi-
nation filed with a federal agency ... related to or stemming from 
an action that can be appealed to the [MSPB]." 29 C.F.R. 
s 1614.302(a)(1).

 8 See supra n.2.


discrimination action in federal district court.9 See 29 C.F.R. 
ss 1614.302(d)(1)(ii), 1614.302(d)(3), 1614.310(a). If 120 days 
pass without a final decision from the agency's EEO office, 
the same avenues of appeal again become available: the 
complainant can file either a mixed case appeal with the 
MSPB or a civil action in district court. See 5 U.S.C. 
ss 7702(e)(1)(A), 7702(e)(2); 29 C.F.R. ss 1614.302(d)(1)(i), 
1614.310(g); 5 C.F.R. s 1201.154(b)(2).

 When a complainant appeals to the MSPB, either directly 
or after pursuing her claim with the agency EEO office, the 
matter is assigned to an Administrative Judge who takes 
evidence and eventually makes findings of fact and conclu-
sions of law. See 5 C.F.R. ss 1201.41(b), 1201.111. The AJ's 
initial decision becomes a final decision if neither party, nor 
the MSPB on its own motion, seeks further review within 
thirty-five days. See 5 C.F.R. s 1201.113. However, both 
the complainant and the agency can petition the full Board to 
review an initial decision. Should the Board deny the petition 
for review, the initial decision becomes final, see 5 C.F.R. 
s 1201.113(b); if the Board grants the petition, its decision is 
final when issued. See 5 C.F.R. s 1201.113(c). At this point, 
the complainant again has a choice: within thirty days of 
receiving a final decision from the MSPB, she can either 
appeal the discrimination claim to the EEOC, see 5 C.F.R. 
s 1201.157, or appeal the entire claim (or any parts thereof) 
to the appropriate district court.10 See 5 U.S.C. s 7703(b), 5 

__________
 9 The party can also appeal the decision to the EEOC, but in that 
case she forfeits further consideration of all nondiscrimination 
claims. See Sloan, 140 F.3d at 1260 (9th Cir. 1998).

 10 On the discrimination claim, the complainant "shall have the 
right to have the facts subject to trial de novo by the reviewing 
court." 5 U.S.C. s 7703(c). The district court reviews nondiscrimi-
nation claims on the administrative record, and will set aside the 
MSPB's determinations only when "arbitrary, capricious, an abuse 
of discretion, or otherwise not in accordance with law"; "obtained 
without procedures required by law, rule or regulation having been 
followed"; or "unsupported by substantial evidence." 5 U.S.C. 
s 7703(c)(1)-(3). For applications of these standards, see Barnes v. 
Small, 840 F.2d 972 (D.C. Cir. 1988); Romain v. Shear, 799 F.2d 

C.F.R. s 1201.175, 29 C.F.R. s 1614.310(b). Finally, if the 
MSPB fails to render a judicially reviewable decision within 
120 days from the filing of a mixed case appeal, the aggrieved 
party can pursue her claim in federal district court. See 5 
U.S.C. s 7702(e)(1)(B).

 B.The Meaning of Section 7702

 We review statutory interpretation by a district court de 
novo.11 See Fawn Mining Corp. v. Hudson, 80 F.3d 519, 521 
(D.C. Cir. 1996); United States v. Wishnefsky, 7 F.3d 254, 
256 (D.C. Cir. 1993). As always, our inquiry starts from "the 
fundamental canon that statutory interpretation begins with 
the language of the statute itself." Pennsylvania Dep't of 

__________
1416, 1421 (9th Cir. 1986). If the complainant seeks only to pursue 
her nondiscrimination claim, appeal properly lies with the Federal 
Circuit. See 5 U.S.C. s 7703(b)(1); 5 C.F.R. s 1201.120; Powell v. 
Department of Defense, 158 F.3d 597, 598-99 (D.C. Cir. 1998).

 11 Appellee argues that this case requires a Chevron analysis of 
MSPB and EEOC regulations. See Chevron U.S.A. Inc. v. Natural 
Resources Defense Council, Inc., 467 U.S. 837 (1984). 5 C.F.R. 
s 1201.156(a), promulgated by the MSPB, provides that "[w]hen an 
appellant alleges prohibited discrimination in the appeal, the judge 
will decide both the issue of discrimination and the appealable 
action within 120 days after the appeal is filed." 29 C.F.R. 
s 1614.310(h), promulgated by the EEOC, allows an individual with 
a mixed case appeal before the MSPB "to file a civil action in an 
appropriate United States District Court ... [a]fter 120 days from 
the date of filing an appeal with the MSPB if the MSPB has not yet 
made a decision." According to appellee, the MSPB and EEOC 
regulations merely require an initial decision within 120 days: 
section 1201.156(a) requires a "judge," rather than the full Board, to 
issue a decision, while section 1614.310(h) requires a "decision," 
rather than a "final decision." We cannot agree. Neither the 
MSPB nor the EEOC have construed their regulations in such a 
manner, and neither advances this construction as a party to this 
dispute. In any case, since we believe that the plain language of 5 
U.S.C. s 7702(e)(1)(B) contains the "unambiguously expressed in-
tent of Congress," Chevron, 467 U.S. at 843, and our decision gives 
effect to that intent, we need not go any further into a Chevron 
step-two analysis.

Pub. Welfare v. Davenport, 495 U.S. 552, 557-58 (1990). See 
also Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 
447 U.S. 102, 108 (1980) (same).

 1.The Statutory Language

 The text of 5 U.S.C. s 7702(e)(1)(B) provides that:

 Notwithstanding any other provision of law, if at any time 
 after--

 (B) the 120th day following the filing of an appeal with 
 the Board under subsection (a)(1) of this section [provid-
 ing for mixed case appeals], there is no judicially review-
 able action ...;

 an employee shall be entitled to file a civil action to the 
 same extent and in the same manner as provided in section 
 717(c) of the Civil Rights Act of 1964....

The parties disagree as to the proper meaning of the term 
"judicially reviewable action"--appellant limits its scope to 
final decisions, while appellee asserts that it encompasses 
both initial and final decisions. Since initial decisions are not 
subject to judicial review, appellant argues, the statute ex-
pressly sanctioned her civil action; there was no judicially 
reviewable action by the 120th day after she lodged her mixed 
appeal with the MSPB.12 Appellee rejects this literal read-
ing, embracing a functional approach analogous to that 
adopted by the district court below. Because an initial 
decision automatically converts into a final decision unless the 
parties or the MSPB seeks further review, appellee argues 
that initial decisions effectively constitute judicially reviewa-
ble actions. We think that appellant's reading of the statute 
is clearly the right one.

 The unambiguous and explicit language of section 
7702(e)(1)(B), as well as the basic design of the statute in 
which it reposes, limit our reading of "judicially reviewable 

__________
 12 At the time appellant filed her complaint in the district court, 
179 days had elapsed since she lodged her mixed appeal with the 
MSPB. Eighty-one days more would pass before a final decision 
issued.

action" to one subject to judicial review as of the time the 
plaintiff files suit. First, the phrase does not speak in 
contingent terms to encompass actions that may or may not 
be judicially reviewable at some point in the future. While an 
initial decision can convert to a final decision with either the 
passage of thirty-five days or the denial of all outstanding 
petitions for review, it can also be overturned or modified by 
the Board, in which case it will never be reviewable by the 
courts in its initial form. Furthermore, throughout the 
thirty-five-day period following the issuance of an initial 
decision, the parties can each petition for another round of 
review from the Board. Once a decision becomes final, 
however, a losing party's only recourse lies in the courts. 
These distinctions in the effect of the two kinds of decisions 
have real-world implications, and defy any gloss that an initial 
decision and a final decision are effectively synonymous.

 Second, as sketched above, see supra pp. 7-10, section 
7702(e)(1)(B) is situated within a larger statutory provision--
section 7702--that structures the path of all mixed cases. As 
a whole, section 7702 provides a rigid time line for advancing 
mixed cases through the various phases of administrative and 
judicial review set forth therein. In looking to its parallel 
structure, we "follow the cardinal rule that a statute is to be 
read as a whole," King v. St. Vincent's Hospital, 502 U.S. 215, 
221 (1991) (citing Massachusetts v. Morash, 490 U.S. 107, 115 
(1989)), "since the meaning of statutory language, plain or 
not, depends on context." Conroy v. Aniskoff, 507 U.S. 511, 
515 (1993). As in Conroy and "the context of this statute 
actually supports the conclusion that Congress meant what 
[section 7702(e)(1)(B)] says." Id. For example, sections 
7702(a)(1) and 7702(a)(2) respectively direct that the MSPB 
and an employee's agency--depending on where the com-
plainant chooses first to pursue his mixed case--"shall, within 
120 days of the filing of the appeal, decide both the issue of 
discrimination and the appealable action", 5 U.S.C. 
s 7702(a)(1), and "shall resolve such matter within 120 days." 
5 U.S.C. s 7702(a)(2). Moreover, sections 7702(e)(1)(A) and 
7702(e)(1)(C) each allow aggrieved employees to pursue their 
claims in federal court when either their employing agency or 


the EEOC has been temporally remiss in processing a case 
before it.13 See 5 U.S.C. ss 7702(e)(1)(A) & 7702(e)(1)(C). 
Read together, these provisions clearly express Congress' 
desire that mixed cases should be processed expeditiously, 
and that complainants should have access to a judicial forum 
should their claims languish undecided in the administrative 
machinery.

 The legislative history lends further support to our reading 
of section 7702(e)(1)(B). The Joint Explanatory Statement of 
the Committee on Conference accompanying the CSRA ("Ex-
planatory Statement") declares that

 [t]he bill establishes mandatory time limits to govern the 
 maximum length of time the employing agency, the 
 MSPB, the EEOC, or the Panel may take to resolve the 
 matter at each step in the process. The act makes 
 compliance with these deadlines mandatory--not discre-
 tionary---in order to assure the employee the right to 
 have as expeditious a resolution of the matter as possible.

H. Conf. Rep. No. 95-1717, Joint Explanatory Statement of 
the Committee on Conference, 95th Cong., 2d Sess., reprinted 
in 1978 U.S.C.C.A.N. 2860, 2874 (emphasis added). Describ-
ing the procedural path for processing mixed cases, the 
Explanatory Statement goes on to explain that

 [t]he conference substitute fully protects the existing 
 rights of employees to trial de novo under title VII of the 
 Civil Rights Act of 1964 or other similar laws after a final 
 agency action on the matter. Under the act's provisions, 
 this final agency action must occur within 120 days after 
 the complaint is first filed. After these 120 days, the 
 employee may appeal to the Board or file a complaint in 
 district court in those cases where the agency in violation 
 of the law has not issued a final decision. If the employ-

__________
 13 5 U.S.C. s 7702(e)(1)(A) entitles an employee to bring suit 
when there is no judicially reviewable action on the 120th day 
following the filing of a mixed case complaint with the employing 
agency, while 5 U.S.C. s 7702(e)(1)(C) allows recourse to the feder-
al courts when there is no "final agency action" on the 180th day 
following the filing of a petition with the EEOC.

 ee files an appeal of the agency action with the MSPB, 
 the employee may file a suit in district court any time 
 after 120 days if the Board has not completed action on 
 the matter by that time.

Id. at 2874-75. (emphasis added). We think this history 
reinforces our reading of the text that Congress used "judi-
cially reviewable action" to refer to final agency actions alone. 
The Board has not "completed action" nor "resolve[d] the 
matter" until it issues a final decision. The text and struc-
ture of section 7702, as well as the accompanying legislative 
history, permit no other interpretation.

 Appellee's principal support for his contrary reading lies in 
a separate passage in the Explanatory Statement. After 
discussing the mandatory nature of the time limits for agency 
action, the Explanatory Statement continues: "[i]t is not 
intended that the employing agencies, the Board, the Com-
mission, or the special panel would automatically lose jurisdic-
tion for failing to meet these time frames. Congress will 
exercise its oversight responsibilities should there be a sys-
tematic pattern of any body failing to meet these time 
frames." Id. at 2874. In appellee's view, this statement 
signals a clear intention to prevent complainants from enter-
ing federal court until the administrative agency takes final 
action, and section 7702(e)(1)(B) merely constitutes a type of 
savings clause that applies on those rare occasions when the 
agency refuses to act altogether.14 Appellee fails to explain, 
however, why authorization of an agency's retention of juris-
diction after a deadline for action has passed should also 

__________
 14 In support of his reading, appellee also cites to sections 
7701(i)(1) & (2), which direct the MSPB to announce time frames 
for processing appeals and to submit yearly reports to Congress 
discussing its adherence to these deadlines. 5 U.S.C. ss 7701(i)(1) 
& (2). Neither the requirement of record-keeping nor the specter 
of congressional oversight undercuts the alternative avenue for 
relief that Congress made available to plaintiffs in section 
7702(e)(1)(B). In fact, these provisions reinforce our reading; they 
illustrate yet another mechanism for assuring the expeditious reso-
lution of employee complaints that Congress so clearly contemplat-
ed.

divest the federal courts of the jurisdiction expressly granted 
by section 7702(e)(1)(B) to consider the appeal of an appellant 
in the same situation. The two are in no way mutually 
exclusive. See Padilla v. Department of the Air Force, 58 
M.S.P.R. 561, 566 (1993) ("The appellant's filing of a civil 
action in a United States District Court does not automatical-
ly terminate the Board's jurisdiction over her appeal," as 
Board law "permits simultaneous adjudication of a mixed case 
appeal before the Board and a United States District 
Court."); Connor v. United States Postal Serv., 52 M.S.P.R. 
588, 591 (1992) (same); McGovern v. Equal Employment 
Opportunity Comm'n, 28 M.S.P.R. 689, 691 n.1 (1985) ("The 
fact that Section 7702(e)(1)(B) allows the appellant to go to 
District Court if he does not have a decision within 120 days 
of his appeal to the regional office does not lead us to 
conclude that the presiding official's initial decision consti-
tutes a final and reviewable Board order in this case. Rath-
er, that section provides the appellant with an alternative and 
additional route of appeal...."). The section allows the 
appellant to ignore the time lapse by the Board or to move 
the case to federal court. Accordingly, although the MSPB 
does not lose its jurisdiction when 120 days elapse without a 
final decision, the appropriate federal district court can take 
jurisdiction as well.

 2.Does Our Reading of Section 7702(e)(1)(B) Produce an 
 Absurd Result?

 Appellee draws on the district court's opinion further to 
argue that a literal reading of section 7702(e)(1)(B) would 
produce absurd results. According to the court below, "[o]ne 
hundred and twenty days is not enough time for the Board to 
complete the entire cycle of initial decision and subsequent 
review that is necessary to render a 'final' decision." Butler 
I, at 7. Allowing a complainant to proceed to federal court 
after the passage of 120 days would, in appellee's view, 
undermine the MSPB's role as the preeminent authority on 
federal personnel disputes and obviate the requirement for 
the exhaustion of administrative remedies. We disagree.

 First, the line of cases relied upon by appellee, dating back 
to Holy Trinity Church v. United States, 143 U.S. 457 (1892), 


and continuing up through United States v. X-Citement 
Video, Inc., 513 U.S. 64 (1994), sanctions departure from a 
statute's plain meaning only in that rare instance where a 
literal reading would produce an application at odds with the 
clearly expressed purpose of the statute. Where a " 'literal 
application of a statute will produce a result demonstrably at 
odds with the intentions of its drafters' ... the intention of 
the drafters, rather than the strict language, controls." Unit-
ed States v. Ron Pair Enterprises Inc., 489 U.S. 235, 242 
(1989) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 
564, 571 (1982)) (emphasis added). We think it clear, howev-
er, for the reasons just discussed, that the plain language of 
section 7702(e)(1)(B) does not lead to a particular application 
that deviates from Congress' plain intent. To the contrary, 
every application of our statutory reading will accord with 
Congress' clearly expressed purpose. Accordingly, the prin-
ciple of statutory construction expressed in Holy Trinity is 
inapposite. To the extent that section 7702(e)(1)(B) permits a 
complainant to proceed to federal district court without first 
obtaining a final decision from the MSPB, and thereby to 
avoid exhausting available administrative remedies, Congress 
intended that result.15 See National Treasury Employees 
Union v. King, 961 F.2d 240, 243 (D.C. Cir. 1992) ("Exhaus-
tion is indeed a 'flexible doctrine,' in which congressional 
intent is of 'paramount importance.' ") (quoting Patsy v. 
Board of Regents, 457 U.S. 496, 501 (1982)).

 We do not discount the special role that the MSPB has 
been assigned in the adjudication of federal personnel dis-

__________
 15 It is for this reason that cases cited by appellee like Tolbert v. 
United States, 916 F.2d 245 (5th Cir. 1990) and Rivera v. United 
States Postal Serv., 830 F.2d 1037 (9th Cir. 1987), are distinguish-
able. In Tolbert and Rivera, the complainants appealed adverse 
decisions from their employing agency to the EEOC, and then filed 
suit before the 180 days allotted the EEOC for rendering a final 
decision had passed. In other words, the plaintiffs brought suit 
without first pursuing their claims at the administrative level to the 
extent explicitly required by statute. In the present case, by 
contrast, appellant pursued her claim before the MSPB and waited 
the statutorily prescribed 120 days before bringing this lawsuit.

putes, nor do we impugn its expertise. The degree of defer-
ence that federal courts must accord MSPB resolutions of 
nondiscrimination claims, see 5 U.S.C. s 7703(c) (limiting 
review to actions found to be arbitrary, capricious, an abuse 
of discretion, contrary to law, or unsupported by substantial 
evidence), speaks directly to its preeminent role in this area. 
We agree with our sister courts that "[a]dministrative law 
judges and the MSPB [and] EEO counselors and the EEOC 
... all have a measure of expertise and familiarity with 
employment discrimination disputes that federal judges can-
not readily match." Vinieratos v. United States Dep't of the 
Air Force, 939 F.2d 762, 775 (9th Cir. 1991). See also Muller 
Optical Co. v. EEOC, 743 F.2d 380, 395 (6th Cir. 1984) ("the 
EEOC has developed considerable expertise in the field of 
employment discrimination since Congress created it by the 
Civil Rights Act of 1964"); cf. Hopkins v. Price Waterhouse, 
920 F.2d 967, 979 (D.C. Cir. 1990) ("In explaining Congress' 
decision to grant the EEOC administrative enforcement pow-
ers, the Senate Committee on Labor and Public Welfare 
observed that ... '[t]he Equal Employment Opportunity 
Commission would be expected to develop an important res-
ervoir of expertise in these matters, expertise which would 
not readily be available to a widespread court system.' ") 
(quoting S. Rep. No. 415, 92d Cong., 1st Sess. 18-19 (1971)). 
Nevertheless, where the complainant has neither deliberately 
abandoned the administrative regime,16 see Vinieratos, 939 
F.2d at 770 (plaintiff abandoned claim when he filed third 
EEO complaint and asked MSPB to defer to EEO process); 
McGinty v. United States Dep't of the Army, 900 F.2d 1114, 
1117 (7th Cir. 1990) (plaintiff abandoned administrative sys-
tem by filing claim in federal court rather than appealing 
agency no age discrimination finding to the EEOC), nor 
refused to cooperate in its processes, see Wilson v. Pena, 79 
F.3d 154, 164 (D.C. Cir. 1996) ("If a complainant forces an 
agency to dismiss or cancel the complaint by failing to provide 

__________
 16 As should be evident, we conclude that a federal employee who 
files suit after 120 days have elapsed but before the MSPB issues a 
final decision has not abandoned her administrative remedies.


sufficient information to enable the agency to investigate the 
claim, he may not file a judicial suit."); Barnes v. Levitt, 118 
F.3d 404, 409 (5th Cir. 1997) (district court lacks jurisdiction 
over employment discrimination suit where plaintiff refused 
to cooperate with agency EEO investigation), and has herself 
followed the rigorous time limitations prescribed by section 
7702, section 7702(e)(1)(B) explicitly sanctions a civil action in 
the federal district courts once 120 days have passed without 
a final decision from the MSPB.17

 While the district court has jurisdiction over such a claim, 
and cannot dismiss it as untimely for failure to exhaust 
administrative remedies, we see no reason why the district 
court cannot stay the case, or hold it in abeyance, for a 
reasonable period of time. See National Treasury Employ-
ees Union, 961 F.2d at 245 (reversing dismissal for failure to 
exhaust administrative remedies but directing the district 
court to hold claim in abeyance for three months to allow the 
FLRA time to hear unfair labor practice claim). Such treat-
ment would allow the court to benefit from the exercise of 
MSPB expertise, preserving judicial resources while simulta-
neously protecting the right of appeal contained in section 
7702(e)(1)(B). In this case, for example, the MSPB's final 
decision was issued in December of 1994, a little more than 
two months after appellant filed her complaint; the district 
court did not rule on her complaint, however, until February 
of 1997. While this delay may not be typical, it reveals that 
the district courts can routinely benefit from MSPB expertise 
without running afoul of the unambiguous language of section 
7702(e)(1)(B), and without disadvantaging parties who follow 
the letter of the statute's time line.

 III.

 For reasons discussed, we hold that the initial decision of 
an administrative judge is not a "judicially reviewable deci-

__________
 17 If the MSPB issues a final decision after more than 120 days 
have elapsed but before the complainant has brought suit, 5 U.S.C. 
s 7703 controls. Under section 7703(b)(2), once the party receives 
notice of the MSPB's final action, she has thirty days in which to 
file a claim in district court. See 5 U.S.C. s 7703(b)(2).

sion" for purposes of 5 U.S.C. s 7702(e)(1)(B) unless neither 
party, nor the MSPB on its own motion, seeks further review 
within thirty-five days. Accordingly, section 7702 allows a 
complainant like Butler to appeal her claim to the appropriate 
federal district court when, after filing a mixed case appeal 
with the MSPB, 120 days elapse without final MSPB action. 
Accordingly, we reverse the dismissal of appellant's claim and 
remand to the district court for further proceedings.

 So ordered.